UNITED STATES ex rel. ELLIOPULOS v. WILLIAMS, Commissioner of Immigration.

(Circuit Court of Appeals, Second Circuit. December 11, 1911.)

No. 94.

ALIENS (§ 46*)—EXCLUSION—CHARACTER OF APPLICANT.

Where relator, after having twice entered the United States under his own name, attempted to enter a third time under an alias so as to conceal his identity and deceived the immigration officers, and he was shown to be suspicious, quarrelsome, and vindictive, admitted carrying a pistol, had been arrested for an assault on his father, and admitted shooting at his brother while he was asleep, he was not a proper person on whom the benefits of American citizenship should be conferred, and was properly excluded.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 105; Dec. Dig. § 46.*]

Ward, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on the relation of Demitrius Elliopulos, against William Williams as Commissioner of Immigration, to test the legality of a warrant of deportation issued by the Acting Secretary of Commerce and Labor. From an order dismissing the writ, relator appeals. Affirmed.

Elias Rosenthal, for appellant.

Henry A. Wise, U. S. Atty. (Daniel Day Walton, Jr., Asst. U. S. Atty., of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The record makes it clear that the appellant is not one upon whom the benefits of American citizenship should be conferred, and that there should be no relaxation of the law to enable him to remain in this country. He is shown to be suspicious, quarrelsome and vindictive. He admits carrying a pistol, being arrested for an assault on his father and entering this country under a false name, viz., Georges Archakos. This name was assumed in order to enable him to escape arrest by the authorities of Greece. He also admits shooting at his brother but says it was against his will. He testifies as follows:

"Q. How was it against your will? A. I had a revolver in my pocket and it accidentally took fire. Q. Did you pull the revolver out of your pocket? A. Yes, I took it out and it accidentally discharged. If I wanted to, I could have killed him. Q. Did you point the revolver at your brother? A. No. Q. Where did you point it? A. The bullet went out while I was holding it in my hand. Q. But you pulled the trigger? A. No. Q. Who pulled it? A. I don't know. Q. How many times did you attempt to shoot him? A. Never any more except that time. Q. Did you have any fight with him prior to this affair? A. No. Q. Where was your brother when you shot at him, was he asleep, was he lying in bed, or what? A. Yes, he was sleeping in bed."

His brother testifies that on this occasion the appellant actually shot him in the back near the left shoulder. The appellant's testimony in connection with that of his brother justifies the conclusion of the District Judge that it amounts to an admission that he shot his brother. That his brother was shot and that the pistol which caused the wound was fired by the appellant at a time when his brother was asleep and when there was trouble between them is proved beyond contradiction. It is in substance admitted by the appellant. He also says in reply to the question, "How many times did you attempt to shoot him?" "Never any more *except that time.*" After all this, his explanation that the pistol was discharged by some occult agency borders closely on the grotesque. The testimony is susceptible of no rational interpretation except that given it by the District Judge.

Again, by giving a false name the appellant was able to enter the country without the inspection contemplated by sections 12, 13 and 16 of the Act of 1907–1910. The appellant had, on two previous occasions, entered the United States, the first time in February, 1903 or 1904, and the second time in February, 1906 or 1907. On each occasion he gave his correct name—Demitrius Elliopulos. By giving a false name when he arrived the third time, he attempted to conceal his identity and deceive the officers of the law. Had he given his correct name the government officials would have been able to test the truth of his answers by comparing them with his previous statements.

One who resorts to fraud and falsehood to circumvent the law violates the law, and the appellant's conduct in this respect is alone sufficient to warrant the dismissal of the writ.

In view of the foregoing we deem it unnecessary to discuss the questions of jurisdiction argued by the appellee.

The appeal is dismissed.

WARD, Circuit Judge (dissenting). The grounds upon which the alien is ordered to be deported are, first, that he admitted that he had committed a crime involving moral turpitude before he came to this country, viz., shooting his brother; second, that he entered the country without inspection. The alien testified elaborately that he had not intended to shoot his brother, and that the shooting was an accident. Although his testimony may have been grotesque and even convincing that he did intentionally shoot his brother, it is impossible, in my opinion, to say that it amounts to an admission by him that he did so. He was testifying through an interpreter and statements made in the questions should not be incorporated into his answers, as, for instance:

"Q. How many times did you attempt to shoot him? A. Never any more except that time. Q. Where was your brother when you shot at him; was he asleep, was he lying in bed, or what? A. Yes; he was sleeping in bed."

That the immigration authorities misunderstood the law seems to me to be proved by the fact that they took the trouble of bringing the alien's brother from Chester, Pa., to prove that the alien had shot him intentionally. No amount of proof, however convincing, can be

substituted for the requirement of the act that the alien must admit having committed the crime.

Coming to the second ground, the record shows that the alien on arrival was taken to Ellis Island. What was this for but for inspection? The fact that he traveled under an assumed name seems to me to be no evidence at all that he entered without inspection.

The powers of the immigration authorities are very great. Courts cannot reverse their findings because they think them wrong. But they must give the alien a fair hearing (Chin Yow, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369), and the question is, What is a fair hearing? It does not seem to me fair to substitute for the requirement of the act that the alien shall admit having committed the crime independent proof that he did so, or to find that he entered without inspection because he entered under an assumed name. There must be some evidence to justify the conclusion of the inspector. No doubt there are cases in which mere ocular observation would be enough, as, for instance, that a badly crippled alien is likely to become a public charge. But if the inspector were to say that an alien was likely to become a public charge, to put an extreme case, because his eyes were blue, could that be sustained as a fair hearing? This particular alien probably is an undesirable citizen, but I think he is being deported at the expense of the law.